UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WELLS FARGO ADVISORS, LLC, et al., | Case No. 2:13-cv-00190-MMD-PAL |
| Plaintiffs, | ORDER |
| v. | (Plaintiffs' Emergency Motion for a Temporary Restraining Order and Motion for Preliminary Injunction – dkt. no. 4). |
| THE HONORABLE RUTH KOLHOSS, an individual and Presiding Judge of the Moapa Tribal Court in and for the Moapa Band of Paiutes, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiffs initiate this declaratory relief action seeking to declare that the tribal court lacks jurisdiction because the Tribe has waived sovereign immunity and agreed to arbitration. Plaintiffs seek an *ex parte* emergency temporary restraining order to enjoin the tribal court from proceeding with a hearing scheduled for February 7, 2013. However, the Court denies Plaintiffs' Motion because (1) the Motion does not comply with Federal Rule of Civil Procedure 65 and the District of Nevada Local Rules; (2) Plaintiffs fail to demonstrate the existence of an emergency; and (3) Plaintiffs fail to demonstrate that they will suffer irreparable harm should the Court deny their Motion.

## II. BACKGROUND

Plaintiffs Wells Fargo Advisors, LLC ("WFA") and its employees Jason Allen and Michael Kratzke are the defendants in a case before Defendant, Hon. Ruth Kolhoss,

Presiding Judge of the Moapa Tribal Court. The Moapa Tribe ("Tribe") formerly had maintained an investment account with WFA. The Tribe ended its affiliation with WFA in August 2012. However, on November 20, 2012, the Tribe appeared in front of Defendant and made an oral motion for *ex parte* injunctive relief against Plaintiffs. Defendant held that the Tribe was likely to succeed on its claim that WFA, Allen, and Kratzke misappropriated the Tribe's funds. Defendant further held that WFA and its employees lost over $3 million of the Tribe's assets, and had a "long history of unauthorized transactions that appear to be churning of their stock portfolio." (Dkt. no. 1-7 at 9.) Judge Kolhoss ordered Plaintiffs to cease and desist any and all transactions on behalf of the Moapa Band of Paiutes investment accounts. (*Id.* at 10.)

On December 13, 2012, Judge Kolhoss ordered Plaintiffs to transfer the Tribe's assets to Nevada State Investment Services. (Dkt. no. 1-7 at 13.) A hearing is scheduled in the case before Judge Kolhoss for February 7, 2013, at 10:00 AM. (Dkt. no. 1-7 at 3.) Plaintiffs filed a Motion to Dismiss in that court on February 4, 2013 ("Motion to Dismiss"). (Dkt. no. 1-7 at 9.) Judge Kolhoss has not issued a ruling on the Motion, but when Plaintiffs' attorney's administrative assistant spoke with the Tribal Court Clerk, the Clerk implied that the Motion to Dismiss would be denied. (*Id.* at page 2, ¶ 2.) Plaintiffs also requested a continuance on the February 7, 2013, hearing (*id.*), but the request was denied (*id.* at page 3, ¶ 3).

On February 5, 2013, Plaintiffs filed the Complaint and Motion for a Temporary Restraining Order ("TRO") in this case. (Dkt. nos. 1 and 4.) As they did in their Motion to Dismiss, Plaintiffs assert that Judge Kolhoss lacks jurisdiction over them as they are non-Indians and the activities underlying the litigation did not take place on Indian land. Plaintiffs further assert that this Court should hold that the dispute between Plaintiffs and the Tribe is subject to binding arbitration, pursuant to a January 22, 2002, agreement between the Tribe and WFA's predecessors. (*See* dkt. no. 1-1.)

///

///

### III. MOTION FOR TEMPORARY RESTRAINING ORDER

#### A. Legal Standard

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F. 3d 832 n.7 (9th Cir. 2001). Further, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A temporary restraining order may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

///
///

1       **B.**    **Failure to Comply with Rule 65 and Nevada Local Rules**

Federal Rule of Civil Procedure 65(b)(1)(a) holds that a court may issue a TRO without written or oral notice to the adverse party only if the motion is accompanied by specific facts in an affidavit or verified complaint demonstrating that immediate and irreparable injury will result to the movant before the adverse party can respond. Plaintiffs plainly fail to meet this requirement. Plaintiffs did not submit a verified Complaint to the Court, nor is Plaintiffs' Motion accompanied by any affidavit. (*See* dkt. no. 1.) The only affidavit submitted is attached to the unverified Complaint, Exhibit G (dkt. no 1-7), and does not satisfy the requirements of Rule 65(b)(1)(a). It is an affidavit of Plaintiffs' counsel's administrative assistant (Wendy Creason) that merely explains her understanding of the state of the proceedings in front of Judge Kolhoss. (Dkt. no. 1-7 at 2-4.) Ms. Creason does not (and certainly cannot, for lack of personal knowledge) address whether immediate and irreparable harm will result to Plaintiffs should the TRO be denied. (*See id.*)

Moreover, Plaintiffs' Motion fails to comply with several Local Rules governing TROs. The Motion does not comply with Local Rule 7-5(b), which requires a party to explain why the matter must be submitted to the Court without notice to all parties. Due to Plaintiffs' February 4, 2013, Motion to Dismiss in the tribal court, Judge Kolhoss presumably understands that Plaintiffs contest the tribal court's jurisdiction. The Court therefore does not understand why this matter needed to be submitted *ex parte*, without notice to and service upon Defendant, particularly when Plaintiffs have provided Defendant with notice of the Complaint. Plaintiffs provide no answer to this query. As such, Plaintiffs' Motion also fails to comply with LR 7-5(c), which states that motions may be submitted *ex parte* for compelling reasons, not simply when an emergency exists.

      **C.**    **Plaintiffs have not met Their Burden of Demonstrating that an Emergency Exists**

Plaintiffs fail to demonstrate that an emergency exists. Plaintiffs merely state that they will suffer irreparable harm if the tribal court continues its "improper imposition of

burdensome and costly proceedings in a forum without jurisdiction." (Dkt. no. 4 at 4.) However, this explanation does not describe an emergency. Presumably, Plaintiffs filed the TRO to obtain an injunction from further proceedings before tomorrow's hearing. But Plaintiffs do not describe why appearing at tomorrow's hearing would result in irreparable harm. Plaintiffs do not explain how their appearing at tomorrow's hearing prevents this Court from later deciding that the tribal court cannot exercise jurisdiction over Plaintiffs in the tribal court. One possibility – though a possibility not articulated by Plaintiffs – is that Plaintiffs will be forced to waive any objection to the tribal court's jurisdiction if they appear tomorrow. However, so long as Plaintiffs raised their personal jurisdiction argument in their first responsive pleading or motion to the tribal court – and it appears that they have done so with their Motion to Dismiss – Plaintiffs' appearing tomorrow will not serve as a consent to jurisdiction. *See Greene v. Keller*, 224 F.R.D. 659, 660-61 (D. Nev. 2004) ("the Federal Rules no longer require a limited appearance for the purposes of contesting jurisdiction or improper service of process. . . .). The plain language of the Federal Rules of Civil Procedure require a defendant to raise personal jurisdiction arguments either in an answer or by motion prior to it. Fed. R. Civ. P. 12(h)(1).[1] Once he has done so, appearing before the court does not amount to a consent to jurisdiction. Plaintiffs have not informed the Court that Moapa tribal law provides for a different result.[2]

For the reasons stated above, the Court can discern no harm in denying the TRO and allowing the tribal court to decide Plaintiffs' Motion to Dismiss. It is not clear to the Court why Plaintiffs waited until February 4, 2013, three days before the scheduled hearing, to file their Motion to Dismiss with the tribal court, and then filed the Complaint

---

[1] Moreover, it is unclear to the Court whether Plaintiffs have already consented to jurisdiction by appearing before the tribal court.

[2] Further, "[l]ike the state courts, many (but not all) tribal courts have codes or rules of procedure similar to the Federal Rules of Civil Procedure." Cynthia Ford, *Integrating Indian Law into A Traditional Civil Procedure Course*, 46 Syracuse L. Rev. 1243, 1268-69 (1996).

and TRO Motion with this Court the next day. The Motion to Dismiss and the TRO Motion raise the same jurisdictional issues. Yet Plaintiffs did not wait for the tribal court to make a determination on the Motion to Dismiss. Instead, Plaintiffs rely on a representation by the tribal court clerk – made in her capacity as a tribe member, not in her official capacity – that the Motion will probably be denied, in deciding to file this TRO Motion. (Dkt. no. 1-7 at 2-4.) Plaintiffs fail to explain what immediate harm they will incur by having the hearing proceed and allowing tribal court sufficient time to decide the motion.

Finally, the Court notes that to the extent any emergency exists because of the February 7, 2013, hearing, the emergency appears to be created by Plaintiffs. Plaintiffs did not inform the Court when they were made aware of the February 7, 2013, hearing, but in all likelihood it was more than two days before the hearing. The Court is left wondering why Plaintiffs waited until less than two days before the tribal court hearing – the evening of February 5, 2013 – to file this Motion. Had Plaintiffs filed this case and a corresponding preliminary injunction motion earlier, the proceedings could have taken place on an expedited, but not emergency, basis. Defendant would have had the opportunity to be heard. This would have been a more prudent course of action. Immediate injunctive relief is "sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (discussing the plaintiff's delay in bringing a preliminary injunction motion) (citations omitted). "By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action[.]" *Id.* (citations omitted). Plaintiffs did not inform the Court that they learned about the February 7, 2013, hearing only shortly before filing their TRO Motion in this Court. Without that information, the Court is left to assume that Plaintiffs knew about the hearing, but waited until the eleventh hour to file this Motion, thereby creating an emergency which would not have existed but for Plaintiffs' indolence.

///

### D. Plaintiffs have not Demonstrated that they will Suffer Irreparable Harm Should a TRO not Issue

As stated, the Court does not agree that tomorrow's hearing creates an emergency warranting a temporary restraining order. Related to this point, the Court finds that Plaintiffs are unlikely to suffer harm should *immediate* injunctive relief not issue. In fact, the only harm (imminent or otherwise) Plaintiffs claim they will suffer should the Court deny their Motion is monetary harm. Plaintiffs explain that they will suffer monetary loss in several different ways should the proceedings continue in tribal court. (*See* dkt. no. 4 at 19-20.) However, to obtain a temporary restraining order, Plaintiffs must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay v. MercExchange, LLC,* 547 U.S. 388, 391 (2006).

## IV. MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' Motion requests both a TRO and a preliminary injunction. (Dkt. no. 4.) The Court's denial of the TRO motion does not affect its determination on the Motion for Preliminary Injunction. Plaintiffs are instructed to file a separate motion for preliminary injunction in this case, with proper notice and service upon Defendant. The standard briefing schedule will apply to that motion.

## V. CONCLUSION

IT IS HEREBY ORDERED that disposition of this matter is appropriate without a hearing. Plaintiffs' Request for a Hearing (dkt. no. 4) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for a Temporary Restraining Order (dkt. no. 4) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs must file a separate motion for preliminary injunction. The standard briefing schedule will apply to that motion.

ENTERED THIS 6th day of February 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

7